SYDCO PHOTOPLAY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10221.   Promulgated June 21, 1927.

> INVESTED CAPITAL.—The actual cash value of a leasehold and theatre equipment, furniture, etc., paid in to a corporation for stock determined both for the purposes of invested capital and deduction for exhaustion.

*Jacob Mertens, Jr., Esq.,* for the petitioner.
*J. E. Marshall, Esq.,* for the respondent.

In this proceeding the petitioner seeks a redetermination of its income and profits-tax liability for the year 1921, for which the Commissioner has determined a deficiency of $3,718.14. The petitioner alleges error on the part of the Commissioner (1) in failing to include in the computation of invested capital the value of a leasehold acquired with capital stock; (2) in failing to allow as a deduction from income an aliquot part of such leasehold value due to the exhaustion of the lease; (3) in failing to include in invested capital the value of furniture, equipment and fixtures acquired with capital stock; and (4) in failing to allow proper depreciation on furniture, equipment and fixtures thus acquired.

### FINDINGS OF FACT.

The petitioner is a corporation organized in 1914 under the laws of the State of New York with an authorized capital stock of a par value of $50,000. Its principal office was at 331 Madison Avenue, New York City.

On June 30, 1913, Charles J. Stumpf and Henry J. Langhoff acquired from George F. Johnson a lease on premises described as follows:

> BEGINNING at the intersection of the southeasterly side of Westchester Avenue with the northerly side of One hundred and sixty-first Street, and running thence northerly along the southeasterly side of Westchester Avenue, two hundred and fourteen feet and ninety-nine one-hundredths of a foot, more or less, to the intersection of the southeasterly side of Westchester Avenue with the westerly side of Hewitt Place; running thence southerly along the westerly side of Hewitt Place, two hundred and fifty-eight feet and fifty-nine one-hundredths of a foot, more or less, to the intersection of the westerly

side of Hewitt Place with the northerly side of One hundred and sixty-first Street, and thence westerly along the northerly side of One hundred and sixty-first Street, two hundred and twenty-three feet and fifty-seven one-hundredths of a foot, more or less, to the point or place of beginning.

The lease provided among other things, that the term of the lease was from October 1, 1913, to October 1, 1934, that the landlord would erect a building thereon in accordance with certain specifications; that the net rental would be $12,750 a year; and that the tenants would pay all taxes and other expenses incident to ownership except interest and principal of mortgages.

On July 19, 1913, the owners of this leasehold sold a one-third interest therein to Sydney S. Cohen in consideration of $5,000, representing a deduction from a commission owed to Sydney S. Cohen by Charles J. Stumpf and Henry J. Langhoff on another real estate deal, and a further consideration of the transfer of $5,000 par value of stock of the Palace Holding Co. from Cohen to Stumpf and Langhoff, in which company Stumpf and Langhoff owned a controlling interest and for which stock Mr. Cohen had paid $5,000 a short time previously.

In March, 1914, Charles J. Stumpf, Henry J. Langhoff and Sydney S. Cohen, parties of the first part, entered into an agreement with Albert J. Norton and George Balsdon, parties of the second part, which provided in part as follows:

WHEREAS, the parties of the first part are now the lessees of a certain parcel of land with a building now in the course of erection thereon, which said building is adapted for amusement purposes, situated at and occupying the entire triangular block in the Borough and County of Bronx, City of New York, bounded by Westchester Avenue, 161st Street and Hewitt Place, which said real property is hereafter, for convenience, referred to as the "theatre property,"

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

I. The parties of the second part agree to purchase at their own expense, all of the equipment, furniture, machinery, scenery, fixtures, etc., more particularly referred to in the annexed Schedule A, and to install the same at their own expense in the said theatre property. The said fixtures are to be installed under the supervision of Sydney S. Cohen and must be furnished and installed in a manner satisfactory to him. All of the said articles referred to in said Schedule A are to be purchased and installed by the parties of the second part at once, and said theatre property shall be completely equipped and all of said furniture and machinery and other articles referred to in said Schedule A. shall all be completely supplied within ten days after the said theatre property is ready for occupancy. The date when said theatre property is ready for occupancy shall be determined by the issuance of the certificates by the various municipal departments having jurisdiction thereof, particularly the issuance of a license permitting the giving of motion picture exhibitions therein.

II. In consideration of the equipment of said theatre property by the parties of the second part as hereinbefore set forth, it is agreed that a corporation is to be organized under the Laws of the State of New York, capitalized at $50,000. The said capital stock to consist of five hundred (500) shares of common stock,

each of the par value of $100. No preferred stock shall be issued. Upon the organization of said company the parties of the first part agree to transfer to said corporation, all of their rights in and to the lease of said theatre property hereinbefore referred to, reserving to themselves, however, the sum of Three thousand, one hundred eighty-seven and 50/100 ($3,187.50) dollars, which the said parties of the first part have deposited with the landlord as advanced rental under and pursuant to the terms of the aforesaid lease. The said sum of $3,187.50 is to be assumed by the said corporation, when organized, as a debt owing to the parties of the first part, and the said corporation, when organized, will execute to said parties of the first part a corporation note payable on demand for said sum. The parties of the first part agree, however, that no demand shall be made for the payment of said note provided that said note is paid in three equal monthly installments.

III. It is hereby agreed that the lease now owned by the parties of the first part and proposed to be transferred to said corporation is valued at the sum of Thirty thousand ($30,000) dollars and that upon the transfer of said lease to said corporation there shall be issued to the parties of the first part capital stock of said corporation of the value of $30,000,—$10,000 of stock to be issued to each of the said Charles J. Stumpf, Henry J. Langhoff and Sydney S. Cohen.

IV. The parties of the second part agree that all of the fixtures, furniture, machinery, etc., referred to in Schedule A and to be installed by them as herein set forth are to be installed for the benefit of said corporation and that they will execute any and all bills of sale or other documents that may be necessary to transfer to said corporation good title to all of said property. It is further agreed that the property so purchased and installed by the parties of the second part, as set forth in Schedule A, is valued at the sum of $20,000 and upon the execution of the papers sufficient to transfer to said corporation good and clear title to all of said property, and upon the production of satisfactory evidence that all of said property has been paid for, that the said corporation will issue to the parties of the second part capital stock of the par value of $20,000,—stock of the value of $10,000 to be issued to each of the said Albert J. Norton and George Balsdon.

Some time between March 1, 1914, and April 17, 1914, the Sydco Photoplay Corporation was organized.

On April 17, 1914, an agreement was entered into between George F. Johnson, landlord, and Charles J. Stumpf, on behalf of himself and Henry J. Langhoff, his partner, tenants, whereby certain alterations were to be made to the building and the rental thereof increased, beginning May 1, 1914, from $12,750 to $15,250, but also provided that a new lease should be drawn up setting forth all of the conditions embodied in the agreement. This lease was executed May 1, 1914.

On July 6, 1914, the lease on the premises involved was transferred from Charles J. Stumpf and Henry J. Langhoff to the Sydco Photoplay Corporation.

Pursuant to the agreements previously entered into between the parties, $30,000 par value of stock was issued to Messrs. Stumpf, Langhoff and Cohen; also, furniture and fixtures were installed. On March 4, 1915, at a meeting of the stockholders of the petitioner, it

was agreed to issue to A. J. Norton $20,000 par value of stock in payment for furniture, equipment and fixtures which he had installed, his promise to pay for certain additional equipment, and the cancellation of indebtedness of $2,200 owed A. J. Norton by the petitioner.

The following schedule shows the items and amounts allowed by the respondent as a basis for depreciation.

| | | | |
|---|---|---|---|
| Projection machine | $1,500.00 | Ticket chopper | 35.00 |
| Draperies | 1,814.19 | Organ | 3,000.00 |
| Signs (flash) | 460.00 | Piano | 225.00 |
| Electric equipment | 426.41 | Seats | 4,685.76 |
| Chairs | 119.00 | | |
| Carpets | 238.94 | Total | 12,664.30 |
| Fountain | 160.00 | | |

None of this amount was allowed by the respondent in the computation of invested capital.

The petitioner introduced testimony and exhibits to show that the carpets cost $1,306.18 instead of $238.94 and that the seats cost $6,264.55 instead of $4,685.76. It further introduced testimony showing that the following items were also furnished and paid for by Norton and Balsdon.

| | | | |
|---|---|---|---|
| Asbestos curtain rigging | $385.00 | Safe | 30.00 |
| Asbestos curtain | 165.80 | Uniforms | 50.00 |
| Exhaust fans | 1,637.00 | Motion picture machine equipment | 87.77 |
| Automatic ticket machine | 250.00 | | |
| Scenery | 400.00 | Electric fixtures | 85.00 |
| Nursery room equipment | 500.00 | Cartage for scenery | 3.00 |
| Flex loom sign | 256.53 | Iron work | 155.00 |
| Vacuum cleaner | 34.00 | Stove and chair | 6.25 |

The total of these items furnished by Norton and Balsdon as shown above is about $19,400.

Norton and Balsdon also forgave indebtedness of the petitioner to them for $2,200, representing services rendered and expenses in selecting and installing the furnishings and equipment and in preliminary advertising.

The value of the leasehold acquired by the petitioner for $30,000 par value of stock was $30,000 and the value, after being installed, of the furniture, equipment, and fixtures, which were acquired for $20,000 par value of stock, was $20,000.

The lease when acquired by the petitioner had an unelapsed term of 20 years, 2 months and 25 days.

OPINION.

TRUSSELL: The lease was acquired by two individuals in June, 1913. Between that date and July 6, 1914, when the lease was turned

over to the petitioner, numerous improvements had been made in the adjoining neighborhood. A subway station was located at the corner of the property, and several multi-floor apartment houses were built in the immediate section. About one month after the original lease was acquired, a one-third interest was sold to Sydney S. Cohen for a consideration which would indicate that the leasehold had a value between $15,000 and $30,000. Sydney S. Cohen, a man of wide experience in theatrical ventures and leases, testified that in his opinion the lease was worth at least $30,000 and that the consideration furnished by A. J. Norton had a value in excess of $20,000. A. J. Norton and George Balsdon with full knowledge of the value at which the leasehold was to be turned in to the corporation, agreed to equip the theater in consideration of the issuance to them of $20,000 par value of stock. The amounts which were subsequently spent by them, as supported by various vouchers, and the testimony of Sydney S. Cohen in respect thereto, would indicate that an estimate of $20,000 for furnishing and equipment of the theater was conservative. The vouchers submitted, together with Mr. Cohen's testimony, and the provisions of the contract with Norton and Balsdon, convince us that the furnishings and equipment as completely installed by Norton and Balsdon were worth the $20,000 claimed. The determination of this point strengthens the valuation of $30,000 for the leasehold, since Norton and Balsdon, as experienced men in the operation of theatres and the valuation of theatrical property, would not be willing to accept a two-fifths interest in the company by expending $20,000 in cash and services, unless they believed the leasehold had a value of at least $30,000.

Accordingly, we are of the opinion that $30,000, the value of the leasehold, and $20,000, the value of furnishings and equipment, should be included as invested capital at acquisition and should be the basis for computing invested capital for the year 1921.

Since the leasehold is subject to exhaustion, the petitioner is entitled to deduct from income each year an aliquot part of $30,000, its cost, based upon a life of 20 years, 2 months and 25 days.

The respondent and the petitioner are apparently in agreement as to the depreciation rate on furnishings and equipment. The petitioner is entitled to use as a basis for depreciation the value of $20,000 for furniture and equipment acquired for stock, in place of $12,-664.30, used by the respondent.

> *The deficiency may be recomputed in accordance with the foregoing findings and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.*